IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

     Plaintiff,

                                            Civil Action No. 5:19-cv-315

v.

MEDGUARD ALERT, INC.,
SAFE HOME SECURITY, INC.,
LIFEWATCH INC., and
A HOLDING GROUP, LLC,

     Defendants.

## SECOND AMENDED COMPLAINT

Plaintiff Diana Mey ("Plaintiff"), on behalf of herself and a class of others similarly situated, states as follows for her Second Amended Complaint against Defendants MedGuard Alert, Inc., Safe Home Security, Inc., Lifewatch Inc., and A Holding Group, LLC (collectively, "Defendants"):

### Preliminary Statement

1.     Plaintiff brings this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

2.     Defendants and their agents knowingly engaged in a pattern and practice of illegal telemarketing in violation of the TCPA.  In particular, Defendants and their agents violated the TCPA by (i) initiating calls to Plaintiff and other putative class members whose numbers are

registered on the National Do Not Call Registry, and (ii) initiating calls to Plaintiff and other putative class members using artificial or prerecorded messages.

3.     Because the calls to Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings certain of her claims on behalf of a proposed nationwide class of persons who also received illegal telephone calls from Defendants in violation of the TCPA.

4.     A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties and Jurisdiction**

5.     Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

6.     Defendant MedGuard Alert, Inc. ("MedGuard") is a Connecticut corporation with a principal place of business located in Middletown, Connecticut.

7.     Defendant Safe Home Security, Inc. ("Safe Home Security") is a Connecticut corporation with a principal place of business located in Middletown, Connecticut.

8.     Defendant Lifewatch, Inc. ("Lifewatch") is a New York corporation with a principal place of business located in Middletown, Connecticut.

9.     Defendants MedGuard, Safe Home Security, and Lifewatch share the same principal place of business at 1125 Middle Street, Suite 201, Middletown, Connecticut 06457.

10.     Upon information and belief, Lifewatch is owned in whole or in part by MedGuard.

11.     Defendant A Holding Group, LLC ("AHG") purports to be a Florida limited liability company.  Upon information and belief, its managing member, Alexander Lopera, is a resident of Florida.

12.     At all relevant times, Defendants conducted business in West Virginia, solicited business in West Virginia, engaged in persistent course of conduct in West Virginia, and/or have derived substantial revenue from goods sold and services provided in West Virginia.

13.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 as to the remaining claims arising under state law.

14.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  In particular, the telemarketing calls to Plaintiff occurred in this district.

## Defendants' Common Enterprise

15.     David Roman is, or was at all times relevant hereto, the Vice President and Chairman of Lifewatch, President and Treasurer of Safe Home Security, and President of MedGuard.

16.     Defendants, through David Roman, conducted the telemarketing practices described herein through an interrelated network of companies that have common ownership and management, business functions, and office locations.

17.     On July 14, 2016, the Federal Trade Commission and the State of Florida filed their Amended Complaint for Permanent Injunction and Other Equitable Relief against, among others,

Defendants Lifewatch, Safe Home Security, and MedGuard.  See *F.E.C., et al. v. Lifewatch Inc., et al.*, No. 15-cv-5781 (N.D. Ill.), ECF 165.

18.     The FEC alleged, among other things, that Defendants Lifewatch, Safe Home Security, and MedGuard operated as a common enterprise while engaging in deceptive and unfair telemarketing activities.  *See id*.  Specifically, Defendants, acting directly or through one or more of their intermediaries, were alleged to have made calls to telephone numbers on the National Do Not Call Registry, "spoofed" their calls by transmitting phony caller identification information to disguise the true source of the calls, and initiated prerecorded outbound telemarketing calls to consumers without prior written consent.

19.     Ultimately, Defendants stipulated to the entry of a Stipulated Order for Permanent Injunction and Other Equitable Relief, which was entered by the Court on June 24, 2019.  *See id*. at ECF 422-1.  David Roman executed the Stipulation in his individual capacity and as an officer or manager of Lifewatch, Safe Home Security, and MedGuard.

20.     In addition to enjoining future deceptive and abusive telemarketing practices, judgment was entered against Safe Home Security and MedGuard in the amount of $8,943,416 and against Lifewatch in the amount of $25,266,886.

**Defendants' Illegal Conduct**

21.     Defendants sell medical alert systems and services to consumers throughout the United States, including West Virginia.

22.     Upon information and belief, Defendants have operated as a common enterprise while engaging in the deceptive and illegal telemarketing alleged herein and have conducted

telemarketing efforts through an interrelated network of companies that have common ownership, business functions, and office locations.

23.     Because Defendants operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged herein.

24.     Defendants market their medical alert systems to consumers through various means, including through unsolicited telemarketing calls.

25.     In order to disguise their true identities and the origins of the calls, Defendants outsource call operations to an opaque network of telemarketing agents.

26.     AHG is one of MedGuard's telemarketing agents, charged with originating customer service contracts and selling or assigning them up to the principal Defendants.

27.     Pursuant to that certain Purchase Agreement, dated June 4, 2018, MedGuard and AHG agreed to the terms upon which MedGuard would purchase medical alert service contracts from AHG on an ongoing basis.  The Purchase Agreement gives MedGuard considerable authority over AHG's operations and the manner in which it originates customers accounts.

28.     Plaintiff's cellular telephone numbers are (304) 242-XXXX, 304-281-XXXX, and 304-280-XXXX.  Plaintiff's numbers are listed on the Do Not Call Registry.

29.     Despite being listed on the Do Not Call Registry, Defendants, directly or through one or more intermediaries, initiated telephone calls to Plaintiff to induce sales of Defendants' medical alert systems and services.

30.     On various calls, Plaintiff learned from various representatives that they were calling on behalf of Defendants.

31.    While Plaintiff received numerous unsolicited telemarketing calls from each Defendant, the following calls evidence Defendants' unlawful conduct:

    a.   On November 23, 2015, Plaintiff received a call from 727-270-7643 to 304-242-XXXX and the agent represented that he was calling on behalf of Lifewatch. Plaintiff received numerous calls from that same number.  And on a later December 15, 2015 call, the agent again represented that he was affiliated with Lifewatch.

    b.   On August 22, 2018, Plaintiff received a prerecorded voice message from 304-439-1938 to 304-281-XXXX.  The caller was identified as "Sarah from Be Safe At Home."  On February 21, 2019, Plaintiff received another call with a prerecorded voice message from "Sarah from Be Safe At Home."

    c.   On August 20, 2019, Plaintiff received a prerecorded voice message from 304-853-1150 to 304-280-XXXX.  After feigning interest in the product/services, Plaintiff was transferred to a live agent who represented that she was affiliated with Five Diamond Home Security.

32.    Upon information and belief, MedGuard was doing business as "Be Safe At Home."

    a.   A third-party individual, whose pseudonym is Robert Brant, received an identical prerecorded from "Be Safe At Home."  After feigning interest in the product offering, Mr. Brant's credit card was charged by MedGuard.  He then received monitoring equipment, promotional materials, and a monitoring agreement—all emblazoned with the MedGuard name and/or logo.

b.   In the course of discovery, MedGuard identified AHG as the entity from which MedGuard purchased the Robert Brant service contract.

c.   Mr. Brant's transaction demonstrates that MedGuard and AHG are the sources from which Plaintiff received the unique prerecorded messages purporting to be from "Sarah from Be Safe At Home."

d.   AHG was acting as an agent of MedGuard by initiating telemarketing calls on MedGuard's behalf and originating service contracts for MedGuard's purchase.

33.   Upon information and belief, Safe Home Security was doing business as "Five Diamond Home Security."  During the August 20, 2019 call, the agent represented that Michael Blakeney would be the installer of the system for Five Diamond.  Mr. Blakeney is believed to be a regional manager for Security Systems, Inc. d/b/a Safe Home Security, according to LinkedIn and a public GoFundMe page.

34.   Prior to receiving the above-described telephone calls from Defendants, Plaintiff never consented to be called.

35.   Upon information and belief, Defendants' telemarketing efforts included the use of an automated telephone dialing system.  On several calls, there was an unnatural pause before connecting Plaintiff to a representative.  This pause is consistent with the use of an ATDS, which waits until the call is answered before connecting the recipient with an available representative.

36.   In some instances, Defendants, acting directly or through one or more intermediaries, "spoofed" their calls by transmitting phony caller identification information so that call recipients do not know the true source of the calls.

37.     In numerous instances, Defendants, acting directly or through one or more intermediaries, failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.

### Class Allegations

38.     As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of all other persons or entities similarly situated throughout the United States.

39.     The class of persons Plaintiff proposes to represent include:

> **Prerecord Class.**  All persons within the United States (a) to whom Defendants or their agents initiated a telephone call promoting Defendants' products or services, (b) to a cellular telephone number, (c) using artificial or prerecorded voice messages, (d) at any time four years before the date this action was commenced through the date of class certification.

> **DNC Class.**  All residential telephone subscribers within the United States (a) who has registered his or her telephone number on the National Do Not Call Registry and (b) received more than one telephone call within any 12-month period by or on behalf of Defendant (c) at any time four years before the date this action was commenced through the date of class certification.

40.     Excluded from the classes are Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

41.     The proposed class members are identifiable through phone records and phone number databases.

42.     Upon information and belief, potential class members number in the thousands, at least.  Individual joinder of these persons is impracticable.

43.     Plaintiff is a member of each class and sustained the same injury as those in the putative classes.

44.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to:

    a.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls using artificial or prerecorded messages;

    b.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to residential telephone numbers on the do-not-call registry;

    c.   Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf obtained prior express written consent from the call recipients;

    d.   Whether the telemarking calls to class members by AHG (and any other telemarketers identified in the course of discovery) were made on behalf of MedGuard, Lifewatch, or Safe Home Security;

    e.   Whether the violations of the TCPA were negligent, willful, or knowing; and

    f.   Whether Plaintiff and the class members are entitled to statutory damages against Defendant.

45.     Plaintiff's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

46.     Plaintiff will fairly and adequately represent the interests of the class.  She is represented by counsel skilled and experienced in class actions, including TCPA class actions.

47.     The actions of the Defendants are applicable to the class and to Plaintiff.

48.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

49.     The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

50.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**COUNT I**
**(Class Claims)**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

51.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

53.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

54.     Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls.  47 U.S.C. § 227(c)(5).

55.     As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Red. 12391, 12397 ¶ 13 (1995).

56.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone number of Plaintiff using prerecorded messages.

57.     Defendants violations were negligent, willful, and knowing.

**COUNT II**
**(Class Claims)**
**Violations of the TCPA, 47 U.S.C. § 227(c)**

58.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

59.     Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to Plaintiff's residential telephone, which was listed on do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

60.     Plaintiff received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA.  Defendants violations were negligent, willful, and knowing.

**COUNT III**
**(Individual Claims)**
**Unfair or Deceptive Acts of Practices**

61.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.     Defendants knowingly engaged in the transmission of misleading or inaccurate caller identification information, including, but not limited to, circumventing caller identification technology that allows the consumer to identify from what phone number or organization the call has originated from, or to otherwise misrepresent the origin and nature of the solicitation.  *See* W. Va. Code § 46A-6F-501.

63.     On multiple occasions, Defendants misrepresented the origin of their calls by circumventing caller identification technology.  Specifically, Defendants manipulated the caller identification to suggest that they were calling from a local West Virginia number.

64.     The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-6F-501, et seq.

WHEREFORE, Plaintiff prays for the following individual and class-wide relief:

A.  Certification of the proposed class;

B.  Appointment of Plaintiff as class representative;

C.  Appointment of undersigned counsel as class counsel;

D.  Judgment permanently enjoining Defendants from engaging in unlawful telemarketing practices;

E.   Judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the TCPA;

F.   Judgment awarding Plaintiff and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing violation;

G.   Judgment awarding Plaintiff damages, including, but not limited to, compensatory damages, liquidated statutory damages, and trebled damages for her individual state law claims;

H.   Judgment holding Defendants jointly and severally liable for the conduct alleged herein; and

I.   Judgment awarding the Plaintiff reasonable attorneys' fees and costs and such other relief as is just and equitable under the circumstances.

JURY TRIAL DEMANDED

**DIANA MEY**

By Counsel


/s/ Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

**CERTIFICATE OF SERVICE**

The undersigned counsel does hereby certify that on February 12, 2021, a true copy of the foregoing document was served upon all parties of record electronically via this Court's CM/ECF system.


/s/ Andrew C. Robey