IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY,

        Plaintiff,

vs.

MEDGUARD ALERT, INC. SAFE HOME
SECURITY, INC., and LIFEWATCH INC.,

        Defendants.

Civil Action No. 5:19-CV-315
(Judge Bailey)

_____

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF
SUBJECT MATTER JURISDICTION AND FAILURE TO
STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**I.      INTRODUCTION**

Plaintiff's opposition confirms that its claims under the Telephone Consumer Protection Act ("TCPA") must be dismissed for lack of subject matter jurisdiction.  In her Opposition, Plaintiff does not (and cannot) challenge the essential premise that an unconstitutional, content-based speech restriction is unenforceable during the time it contains illegal discrimination.  Instead, Plaintiff downplays the effect of the Supreme Court decision in *Barr v. Am. Ass'n of Political Consultants, Inc. ("AAPC")*, 140 S. Ct. 2335 (2020), calling it an "otherwise unremarkable opinion" (Pltf. Mem. at 1) when, in fact, the Supreme Court found that the TCPA contained an unconstitutional, content-based speech restriction rendering the statute unconstitutional and requiring that the offensive government-debt exception be severed from the statute.  Plaintiff's Opposition argues that Supreme Court dicta should be given binding effect simply because it is Supreme Court dicta.  Such circular logic cannot serve as the only justification for enforcing an unconstitutional statute.

1

Plaintiff similarly argues, without support, that the general consumer protection provisions of the West Virginia Consumer Credit Protection Act ("WVCCPA") do not apply to them because there are more specific provisions for telemarketers.

Finally, despite Plaintiff's claims to the contrary, the Second Amended Complaint plainly contains allegations involving an automated telephone dialing system. Thus, if the Court does not dismiss Plaintiff's claims (though it should), it should stay this case pending the outcome of the Supreme Court case *Facebook v. Duguid*.

## II.  ARGUMENT

### A.  *AAPC* Explicitly Held the Speech Restriction with the Government Debt Exception was Unconstitutional From 2015 to July 6, 2020

As Defendants explained in their moving papers, the Supreme Court held in *AAPC*, that:

> The initial First Amendment question is whether the ***robocall restriction***, with the government-debt exception, is content-based. The answer is yes. … [And] [t]he Government concedes that it cannot satisfy strict scrutiny to justify the government-debt exception. We agree.

*AAPC*, 140 S. Ct. at 2346 (emphasis added); 2347 ("In short, the ***robocall restriction*** with the government-debt exception is content-based.") (emphasis added). As Judge Feldman put it:

> [T]he plurality opinion in *AAPC* spelled out the technical holdings of the Court in explicit terms: (1) 'Six members of the Court… conclude that Congress has impermissibly favored debt collection speech over political and other speech, in violation of the First Amendment' … That much is binding on all other courts.

*Creasy v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *8-9 (E.D. La. Sept. 28, 2020) (quoting *AAPC*, 140 S. Ct. at 2343). Further,

> [w]hile that holding affirmatively binds this Court … it is also inescapable as a logical matter. Indeed, while the plaintiffs argue that the severance of the *exception* has no bearing on the constitutionality of the *rule*, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis.

*Id.* at *10 (emphasis in original).  Therefore, *AAPC* expressly held that the ***speech restriction*** was unconstitutional when combined with the government exception.  In other words, the provision was unconstitutional from the addition of the exception until it was severed by the Supreme Court on July 6, 2020.  *See Lindenbaum v. Realgy*, No. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572, at *19 (N.D. Ohio Oct. 29, 2020) ("The insertion of the government-debt exception transformed this valid time, place, and manner restriction into an unconstitutional content- based restriction.").

This is the exact outcome advocated for in a recent *amici curiae* brief submitted to the Sixth Circuit, which is currently considering an appeal of the district court decision in *Lindenbaum.* The *amici curiae* brief was submitted by, among others, "scholars who teach, research, and write about constitutional law, including the principles of free expression and issues related to content-based discrimination."  Brief of *Amici Curiae* Constitutional Law Professors, the American Civil Liberties Union, and the American Civil Liberties Union of Ohio Foundation in Support of Defendant-Appellee Realgy, LLC, *Lindenbaum* v. *Realgy, LLC*, No. 20-4252, (6th Cir. Mar. 18, 2021).[1]  The brief argues that if the court were to find that while the government-debt exception was in place (or while the provision was unconstitutional) liability would attach to the disfavored speakers but not the favored speakers, it would produce the same absurd outcome the Supreme Court sought to avoid.  *Id.* at 11-12 ("During the operative period from the government-debt exception's enactment until AAPC, only speech by the amended TCPA's disfavored speakers—defendants like Realgy—would be treated as unlawful, while the favored class—government debt collectors—would be uninhibited. Such a result would enforce precisely the discrimination that was struck in *AAPC*."  *Id.* (citing *AAPC*, 140 S.Ct. at 2354 ("The First Amendment is a kind of

---

[1] A true and correct copy of the Brief of Amici Curiae Constitutional Law Professors, the American Civil Liberties Union, and the American Civil Liberties Union of Ohio Foundation in Support of Defendant-Appellee Realgy, LLC is attached hereto as Exhibit 1.

Equal Protection Clause for ideas ... Congress violated that First Amendment equal-treatment principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls.")).  The *amici curiae* brief correctly argues that were the Court to enforce the statute retroactively only against the non-government speakers,

> [s]uch a result could provide a curious period of enforceability for even obviously unconstitutional laws: a disfavored speaker, or a vulnerable class of person, could still be subject to liability for violating a statute that was plainly unconstitutional at the time the violation took place. That, indeed, is the position in which Realgy allegedly finds itself here.

*Id.* at 15.  Ultimately, the *amici curiae* of constitutional law professors and scholars  conclude that the district court correctly came to the only plausible solution: "declining to enforce an unconstitutionally discriminatory statute against the disfavored speaker."  *Id.*

Plaintiff's Opposition does not address *any* of the constitutional arguments discussed *supra* or in Defendant's moving papers.  Instead, they cavalierly dismiss *Creasy* and *Lindenbaum*, asserting that they "want for persuasive reasoning."  But, plainly, these two cases engage in a clear and well-reasoned analysis instead of blindly following non-binding dicta.  In fact, Plaintiffs make no argument other than that the Court should follow non-binding Supreme Court dicta simply because it is non-binding Supreme Court dicta, even if that outcome will perpetuate the very unconstitutional discrimination the Supreme Court sought to avoid.[2]  As

---

[2] Plaintiff baldly states that footnote 12 of Justice Kavanaugh's plurality opinion is "extraordinarily persuasive" because it "signals the intent of the Supreme Court and what it would likely hold in the future."  Pltf. Mem. at 5.  This claim is absurd given that the footnote spoke for only a three Justice plurality.  As Defendants made clear in their moving papers, there were only two holdings in the decision that were endorsed by a majority of the Justices: (1) that Congress impermissibly favored debt-collection speech over political and other speech; and (2) that the government-debt exception should be invalidated and severed from the rest of the statute.  *AAPC*, 140 S. Ct. at 2343.  Simple math shows that a three Justice plurality simply cannot signal how the Supreme Court would rule in the future.

Defendants convincingly showed in their moving papers, the mere fact that the dicta exists is not reason enough to blindly follow it.

### B.  Plaintiff Has Failed To State A Claim Under the WVCCPA

Plaintiff's sole response to Defendants' argument that Plaintiff failed to state a claim under the WVCCPA is to state, without any support, that the pleading requirements of § 46A-6-106(a) do not apply to them.  Article 6 of the WVCCPA is entitled "General Consumer Protection" and provides the general overview of consumer protection laws, including but not limited to, definitions, rules and regulations, and requirements for private causes of action.  *See* W. Va. Code § 46A-6-101, et seq.  Articles 6A – 6N provide for more detailed protection from specific types of consumer fraud, including Article 6F for consumer protection from telemarketing.  *See, generally,* West Virginia Consumer Credit Protection Act, W. Va. Code §§ 46A-6-101 – 46A-8-102.  To say that Article 6 does not apply to claims under Article 6F misreads the statute.  Indeed, Article 6F explicitly cross-references Article 6, showing that the Articles are interrelated.  W. Va. Code § 46A-6F-501(8) ("To engage in any "unfair methods of competition and unfair or deceptive acts or practices" as specified in §46A-6-102(f) of this code and made unlawful by the provisions of §46A-6-102 of this code.").  Tellingly, Plaintiff can cite to no case law to support its contention that the "General Consumer Protection" laws do not apply to the telemarketing consumer protection laws.  For these reasons, Plaintiff's WVCCPA claims must be dismissed.

### C.  Plaintiff Concedes Certain Calls Are Outside the Statute of Limitations

Plaintiff concedes, because she must, that the November 23, 2015 call, along with any calls made prior to November 21, 2017, are outside the statutes of limitations for Plaintiff's causes of action.  Pltf. Mem. at 6-7.  But, Plaintiff argues that a clerk's entry of default as to the first amended complaint against Defendant Lifewatch, or the passage of time, precludes it from asserting a statute

of limitations defense.  Id. at 7.  Plaintiff is mistaken.  It is well-settled law that the filing of an amended complaint supersedes previous complaints rendering them, and any defaults based on them, a nullity and moot.  *See, e.g., ThermoLife Int'l, Ltd. Liab. Co. v. Sechel Holdings, Inc.*, No. CV 14-2291-PHX-JAT, 2015 U.S. Dist. LEXIS 44767, at *4 (D. Ariz. Apr. 3, 2015) ("Because Plaintiff's original complaint "no longer performs any function," a default based on the original complaint must also be rendered ineffectual and non-existent."); *Allstate Ins. Co. v. Yadgarov*, No. 11 Civ. 6187 (PKC) (VMS), 2014 U.S. Dist. LEXIS 30068, at *26 (E.D.N.Y. Feb. 10, 2014) ("Furthermore, as the Clerk's entries of default and Plaintiffs' motion for default judgment are premised on a Complaint that is now a legal nullity, Plaintiffs' motion is moot."); *Kamdem-Ouaffo v. Task Mgmt.*, No. 1:17-cv-7506 (NLH/JS), 2018 U.S. Dist. LEXIS 113899, at *64-65 (D.N.J. July 9, 2018) ("Typically, a Clerk's entry of default on an original complaint is rendered moot where an amended complaint supersedes the original complaint.").

### D.  A Stay Pending the Outcome of *Facebook Inc. v. Duguid* is Appropriate if the Case is Not Dismissed

As described in Defendants' moving papers, the Supreme Court is currently considering *Facebook Inc. v. Duguid* (No. 19-511) ("*Facebook*") which seeks to resolve a circuit split on the definition of an "automated telephone dialing system" or "ATDS."  Plaintiff claims that *Facebook* does not apply to its claims because the definition of an "ATDS" is not at issue.  However, the complaint includes allegations that "[b]ecause calls to Plaintiff were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings certain of her claims on behalf of a proposed nationwide class of persons…" (Second Am. Compl. ¶ 3) and "[u]pon information and belief, Defendants' telemarketing efforts included an automated telephone dialing system."  Second Am. Compl. ¶ 35.  Plainly, these allegations put the definition of an ATDS

squarely at issue in this action.  Thus, for all the reasons stated in Defendants' moving papers, which Plaintiffs have not contested, a stay pending the outcome in *Facebook* is appropriate.

### III.    CONCLUSION

For the reasons set forth in Defendants' moving papers and above, Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety.

Respectfully submitted,

Medguard Alert, Inc., Safe Home Security, Inc., and Lifewatch Inc.

By Counsel

/s/ Carrie Goodwin Fenwick
Carrie Goodwin Fenwick (WVB# 7164)
Goodwin & Goodwin, LLP
P.O. Box 2107
Charleston, WV 25328-2107
T: 304-346-7000
cgf@goodwingoodwin.com

Joseph Lipari (admitted pro hac vice)
The Sultzer Law Group P.C.
270 Madison Ave.
Suite 1800
New York, NY 10016
T: 917-444-1960
liparij@thesultzerlawgroup.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

**DIANA MEY,**

    **Plaintiff,**

**vs.**

               **Civil Action No. 5:19-CV-315**
**MEDGUARD ALERT, INC. SAFE HOME**   **(Judge Bailey)**
**SECURITY, INC., and LIFEWATCH**
**INC.,**

    **Defendants.**

_____

**<u>CERFICIATE OF SERVICE</u>**

  I, Carrie Goodwin Fenwick, hereby certify that on this the 31st day of March, 2021, that I served a true copy of Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted via CM/ECF on:

     Andrew C. Robey, Esquire
     Ryan M. Donovan, Esquire
     HISSAM FORMAN DONOVAN RITCHIE PLLC
     P.O. Box 3983
     Charleston, WV 25339

        <u>/s/ Carrie Goodwin Fenwick</u>