No. 20-4252
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

ROBERTA LINDENBAUM,
*Plaintiff-Appellant*
UNITED STATES,
*Intervenor-Appellant*
v.
REALGY, LLC, et al.,
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Northern District of Ohio
No. 4:20-cv-00794-JG

---

**Brief of *Amici Curiae* Constitutional Law Professors, the American Civil Liberties Union, and the American Civil Liberties Union of Ohio Foundation in Support of Defendant-Appellee Realgy, LLC**

---

David J. Carey
Elena M. Thompson*
AMERICAN CIVIL LIBERTIES UNION OF
OHIO FOUNDATION
1108 City Park Avenue, Suite 203
Columbus, OH 43206
(614) 586-1972
dcarey@acluohio.org
ethompson@acluohio.org

Freda J. Levenson
AMERICAN CIVIL LIBERTIES UNION OF
OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
(614) 586-1972
flevenson@acluohio.org

Brian Hauss
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
bhauss@aclu.org

Michael J. Steinberg
Jonah Rosenbaum**
Peter Harding**
CIVIL RIGHTS LITIGATION INITIATIVE
UNIVERSITY OF MICHIGAN LAW
SCHOOL
701 South State Street, Suite 2020
Ann Arbor, MI 48109
(313) 763-1983
mjsteinb@umich.edu

*Admitted as *amicus* attorney

**Law students practicing pursuant to 6 Cir. R. 46(d)

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

*Amici Curiae* the American Civil Liberties Union and the American Civil Liberties Union of Ohio Foundation are nonprofit entities that do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in *amici curiae*.

/s/ *David J. Carey*
David J. Carey

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................4

INTEREST OF AMICI CURIAE ........................................................................5

SUMMARY OF ARGUMENT ...........................................................................6

ARGUMENT .......................................................................................................8

    Realgy Cannot Be Held Liable Under a Discriminatory Statutory Scheme
    That Punishes Only Disfavored Speakers ................................................... 8

CONCLUSION ..................................................................................................16

CERTIFICATE OF COMPLIANCE ..................................................................18

CERTIFICATE OF SERVICE ...........................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Barr v. Am. Ass'n of Political Consultants, Inc. (AAPC)*,
140 S.Ct. 2335 (2020) ................................................................................... passim

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) ................................................. 10

*Carey v. Brown*, 447 U.S. 455 (1980) .......................................................... 13, 14

*City of Chelsea v. King*, No. 20C0624-OI
(14A-3 District Court, Michigan, Feb. 22, 2021) ............................................... 14

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ................................. 9

*Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993) ................................ 10

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ....................................... 9, 10

*O'Neal v. Bagley*, 743 F.3d 1010 (6th Cir. 2013) ............................................... 10

*Opati v. Republic of Sudan*, 140 S.Ct. 1601 (2020) .......................................... 10

*Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972) ............................. 13, 14

*Schacht v. United States*, 398 U.S. 58 (1970) ............................................ 12, 13

**Statutes**

10 U.S.C. § 772 ..................................................................................................... 13

18 U.S.C. § 702 ..................................................................................................... 13

MCL 257.676b ...................................................................................................... 15

**Other Publications**

Omar Abdel-Basqui, *Judge tosses out 'unconstitutional' Chelsea protester tickets*,
Detroit Free Press (Feb. 22, 2021),
https://www.freep.com/story/news/local/michigan/2021/02/22/chelsea-michigan-protest-police-department/4546341001/. ........................................................ 16

## INTEREST OF AMICI CURIAE

*Amici* law professors, listed by name and institutional affiliation on the signature page of this brief, are scholars who teach, research, and write about constitutional law, including the principles of free expression and issues related to content-based discrimination. *Amici* submit this brief solely as individuals and not on behalf of the institutions with which they are affiliated.

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, non-partisan public interest organization dedicated to defending the civil liberties guaranteed by the Constitution and laws of the United States. The American Civil Liberties Union of Ohio Foundation is an affiliate of the national ACLU. The right to free expression generally, as well as protection against governmental restrictions of speech based on its content in particular, are of special concern to each organization. The ACLU has been at the forefront of numerous state and federal cases addressing these rights and interests.

All parties have consented to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), undersigned counsel certifies that no counsel for a party authored this brief in whole or in part, that no party or party's counsel contributed money intended to fund preparing or submitting the brief, and no person or entity other than the ACLU of Ohio, its members, or its counsel contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF ARGUMENT

Writing for the Court in *Barr v. American Ass'n of Political Consultants (AAPC)*, Justice Kavanaugh acknowledged the elephant in the room of both that case and this one: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." 140 S.Ct. 2335, 2343 (2020). *See also id.* at 2344 (leading Senate sponsor of the TCPA described robocalls as "the scourge of modern civilization"). *Amici curiae*—an assemblage of First Amendment scholars, as well as the American Civil Liberties Union and its Ohio affiliate—write, in part, to address the broader ramifications of this case for constitutional doctrine beyond its peculiar factual context.

*AAPC* resolved the issue of whether government debt-collection calls may be exempted from the TCPA's general prohibition on robocalls: they may not. For violations occurring post-*AAPC*, the TCPA's restriction applies equally regardless of a robocall's content. This case presents the retrospective question: are robocalls that occurred under the pre-*AAPC* discriminatory scheme that began in 2015—a scheme that banned only disfavored speech, *i.e.*, anything other than government debt-collection calls—still subject to ongoing enforcement and liability? If so, which ones: robocalls placed by the disfavored speakers only, or those placed by both the disfavored and the favored?

There are three avenues to resolve these questions, two of which lead to absurd and inequitable outcomes. First, Lindenbaum would have this Court establish broad retroactive liability, even on government debt collectors who were relying on the letter of the statute as it existed at the time. To do so would violate both core constitutional precepts and basic fairness. Second, the Government asks this Court to impose liability upon the disfavored speakers only—that is, anyone who is not a government debt collector. But that presents its own outrageous result; it would operate to carry forward the same content-based discrimination found constitutionally infirm in *AAPC*.

The final option was correctly applied by the District Court. The TCPA's general prohibition on robocalls may not be enforced for calls that were placed while the TCPA's unconstitutional government-debt exemption was in effect.

This Court should affirm.

# ARGUMENT

## Realgy Cannot Be Held Liable Under a Discriminatory Statutory Scheme That Punishes Only Disfavored Speakers

In declining to invalidate the entire robocall restriction of the Telephone Consumer Protection Act (TCPA), the Supreme Court resolved a prospective question only. *See Barr v. Am. Ass'n of Political Consultants, Inc. (AAPC)*, 140 S.Ct. 2335, 2347–49 (2020). It is undisputed that the unconstitutional government-debt exception has no impact on calls occurring prior to the 2015 TCPA amendment or subsequent to the district court's final judgment on remand from the appeal in *AAPC*; the disputed window is only the period in between.

Contrary to Lindenbaum's position here, *AAPC* provided that "no one should be penalized or held liable for making robocalls to collect government debt" during that operative period. *Id.* at 2355 n.12 (plurality opinion). But the Court was not called upon to resolve, and so did not resolve, the question of whether retrospective liability would be constitutional as to parties like Realgy: those who made robocalls for matters other than government debt collection during the period when the government-debt exception was in effect. *See id.* at 2355 n.12 (stating only that *AAPC* itself "does not negate" such liability).

Presented with that issue now, this Court has three potential solutions. Lindenbaum proposes that all robocalls, including for government debt collection, may be subject to retrospective liability. The Government argues that its debt

8

collectors, but no one else, should continue to be exempt during the operative time frame. As discussed below, these outcomes would violate basic precepts of law, leaving only a third solution: there can be no liability under the TCPA's robocall ban during the operative period.

**1.** Lindenbaum urges this Court to deem the 2015 amendment void *ab initio*, preserving TCPA liability at all times. *See* Appellant Brief, ECF No. 22 at p. 21 ("the government-debt exception never lawfully took effect"). But as the Government notes in its brief, to hold debt collectors liable would likely violate principles of due process and fair notice. *See* Intervenor-Appellant Brief, ECF No. 33 at pp. 21-22 (citing *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)).

On this point, the Government has the right of it. *Fox Television Stations* is couched in a discussion of vagueness, but the principles at work here are even more fundamental. During the operative period while the government-debt exception was in place, government debt collectors enjoyed the protection of plain statutory law. To retroactively hold them liable now would penalize them for relying on a statute that was, at the time, in full force and effect. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). For that reason, courts do not construe legislation to have retroactive effect absent clear statutory

9

directive, *see id.*; *Opati v. Republic of Sudan*, 140 S.Ct. 1601, 1607 (2020), and they certainly should not affirmatively introduce retroactive prohibitions on their own.

Nor can government debt collectors be said to have had fair notice. Speakers cannot fairly be subjected to enforcement retroactively on the basis that they should have anticipated a judicial decision striking an exception that inarguably encompassed them. *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 353–54 (1964) (barring *ex post facto* criminal prohibitions created by judicial determinations); *O'Neal v. Bagley*, 743 F.3d 1010, 1015 (6th Cir. 2013) ("a defendant's due process rights are violated when a court applies a construction of a statute that is unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue").

Lindenbaum argues that *AAPC*'s preservation of the TCPA's general ban must be applied both prospectively and retrospectively, relying on the rule of *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993), that courts cannot selectively decide to issue prospective-only rulings. But the *Harper* rule does not require that courts robotically ignore structural absurdities, such as the violations of due process and equal protection principles described here, that would result by artificially imposing the same remedy both forwards and backwards in time. On the contrary, that rule arises from the principle that "similarly situated" litigants must not be treated differently. *Harper*, 509 U.S. at 97. A government debt collector in 2017 is

not similarly situated to a government debt collector after *AAPC*. Only the latter has the benefit of notice that the government-debt exception is invalid.

Mechanically finding the government-debt exception void *ab initio* would, as the District Court observed, lead to an absurd result. *See* Opinion, R. 26 at PAGEID # 455–56. Indeed, the Supreme Court could hardly have been clearer on this matter. *See also AAPC*, 140 S.Ct. at 2355 n.12 ("no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case").

**2.** The Government argues that parties like Realgy should be subject to liability for robocalls while the government exception was in effect, but that robocallers seeking to collect the Government's own debt should not. For that proposition, it relies heavily on Realgy's "ample notice" of the unconstitutional statutory scheme, and baldly asserts that such a scenario would be "even-handed[]" and "does not entail unequal treatment." ECF No. 33 at 22.

Of course, no amount of notice can cure an equal treatment infirmity. And unequal treatment is precisely what the Government's preferred outcome would bring. During the operative period from the government-debt exception's enactment until *AAPC*, only speech by the amended TCPA's disfavored speakers—defendants like Realgy—would be treated as unlawful, while the favored class—government

11

debt collectors—would be uninhibited. Such a result would enforce precisely the discrimination that was struck in *AAPC*. *See* 140 S.Ct. at 2354 ("The First Amendment is a kind of Equal Protection Clause for ideas … Congress violated that First Amendment equal-treatment principle in this case by favoring debt-collection robocalls and discriminating against political and other robocalls." (internal citation omitted)).

Considering the broader implications of the Government's argument only makes the absurdity starker. And indeed, such a scenario has arisen before. *See Schacht v. United States*, 398 U.S. 58 (1970). In *Schacht*, the Court considered two federal statutes: 18 U.S.C. § 702 generally criminalized the wearing of a military uniform absent prior authorization, while 10 U.S.C. § 772 authorized the wearing of uniforms in certain discrete circumstances. One such circumstance, explained in § 772(f), allowed a uniform to be worn by an actor in a theatrical performance, so long as the actor did not "say things during his performance critical of the conduct or policies of the Armed Forces." 398 U.S. at 62–63. The petitioner, who had worn a uniform in a "street skit … to expose the evil of the American presence in Vietnam" was tried and convicted under § 702. The Court struck that latter clause from the statute on First Amendment grounds and, critically, reversed Schacht's conviction. *Id.* at 63 ("his conviction can be sustained only if he can be punished for speaking out against the role of our Army and our country in Vietnam. Clearly punishment

12

for this reason would be an unconstitutional abridgment of freedom of speech"). The Government's reliance on notice as a determining factor in this case, *see* ECF No. 33 at 22, is inconsistent with *Schacht*. Schacht surely had fair notice that his conduct was forbidden by statute. That did not render enforcement against him, as a disfavored speaker, permissible. *See id.*

The Government's position here would also countenance the prosecution of protestors under laws that impose content- or viewpoint-based restrictions on speech in traditional public forums. *See Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972); *Carey v. Brown*, 447 U.S. 455 (1980). *Mosley* addressed a Chicago ordinance that generally prohibited picketing within 150 feet of any school building, but exempted labor picketing. For several months, Mosley had peacefully protested racial discrimination at a high school, displaying a sign reading "Jones High School practices black discrimination. Jones High School has a black quota." *Id.* at 96. As with the actor in *Schacht*, Mosley had ample notice that his conduct violated the statute; indeed, he contacted the Chicago Police Department and was expressly told that he would be cited, *id.* at 93, leading him to cease his protest and file suit. The Court struck the entire ordinance on Equal Protection Clause and First Amendment grounds, reaffirming that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id.*

13

*Carey* is similar. That case involved an Illinois statute banning picketing in front of residences and dwellings, again exempting only labor picketers. Members of a civil rights organization, the Committee Against Racism, were cited when they peacefully demonstrated in front of the Mayor of Chicago's home, protesting his alleged failure to support busing to achieve racial integration in schools. 447 U.S. at 457. Pointing to the "constitutionally indistinguishable" ordinance in *Mosley*, the Court struck the statute. *Id.* at 460.

*Mosley* and *Carey* avoided the present case's conundrum only by happenstance. Had Mosley been cited during his months of protesting before contacting the police, and had the Court in *Mosley* or *Carey* merely severed the ordinance's unconstitutional labor exemption, the demonstrators could have been prosecuted. Such an interpretation would, in practice, have allowed the government to do precisely what the Court said in *Mosley* it could not: grant the use of a forum to those whose views it approves, while punishing disfavored speech and speakers. *See* 408 U.S. at 96.

This scenario is not hypothetical. It is precisely what transpired in a recent case in Michigan. *See City of Chelsea v. King*, No. 20C0624-OI (14A-3 District Court, Michigan, Feb. 22, 2021) (dismissal order attached as Exhibit 1). Sixteen-year old student Mya King participated in a peaceful gathering in support of the Black Lives Matter movement. She was ticketed for violating MCL 257.676b. Like

14

the ordinance in *Mosley*, MCL 257.676 prohibits impeding traffic generally, but contains an exception for those soliciting donations from drivers for civic or charitable organizations. Opposing King's motion to dismiss, the City argued that the proper remedy was to sever the charitable donation exception, but to apply the general prohibition retroactively to King. Ruling from the bench, the judge rejected that argument, explaining that the City's theory would effectively punish King under a statute that was unconstitutional when it was applied.[1]

To adopt the Government's position here would be to enforce the same unconstitutional and inequitable result that was averted in *Schacht*, *Mosley*, *Carey*, and *King*—and for that matter, in *AAPC* itself. *See* 140 S.Ct. at 2354. Such a result could provide a curious period of enforceability for even obviously unconstitutional laws: a disfavored speaker, or a vulnerable class of person, could still be subject to liability for violating a statute that was plainly unconstitutional at the time the violation took place. That, indeed, is the position in which Realgy allegedly finds itself here. As Lindenbaum's proposed solution is equally unacceptable, *see supra*, the only remaining option is that selected by the District Court: declining to enforce an unconstitutionally discriminatory statute against the disfavored speaker.

---

[1] A hearing transcript has been ordered. *See also* Omar Abdel-Basqui, *Judge tosses out 'unconstitutional' Chelsea protester tickets*, Detroit Free Press (Feb. 22, 2021), https://www.freep.com/story/news/local/michigan/2021/02/22/chelsea-michigan-protest-police-department/4546341001/.

## CONCLUSION

For the foregoing reasons, *Amici Curiae* urge this Court to affirm the District Court's order dismissing this action.

Dated: March 18, 2021

Respectfully submitted,

/s/ David J. Carey
David J. Carey
Elena Thompson*
AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION
1108 City Park Avenue, Suite 203
Columbus, OH 43206
(614) 586-1972
dcarey@acluohio.org
ethompson@acluohio.org

Freda J. Levenson
AMERICAN CIVIL LIBERTIES UNION OF OHIO FOUNDATION
4506 Chester Ave.
Cleveland, OH 44103
(614) 586-1972
flevenson@acluohio.org

*Admitted as *amicus* attorney

Brian Hauss
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2604
bhauss@aclu.org

Michael J. Steinberg
Jonah Rosenbaum**
Peter Harding**
Civil Rights Litigation Initiative
University of Michigan Law School
701 South State Street, Suite 2020
Ann Arbor, MI 48109
(313) 763-1983
mjsteinb@umich.edu

**Law students practicing pursuant to 6 Cir. R. 46(d)

*Counsel for Amici*

*Amici* Constitutional Law Professors:

Erwin Chemerinsky, Dean and Jesse H. Choper Distinguished Professor of Law, University of California, Berkeley, School of Law

Andrew Geronimo, Director, First Amendment Clinic, Milton A. Kramer Law Clinic Center, Case Western Reserve University School of Law

G.S. Hans, Assistant Clinical Professor of Law, First Amendment Clinic, Vanderbilt Law School

Rodney A. Smolla, Dean and Professor of Law, Delaware Law School of Widener University

Nat Stern, John W. & Ashley E. Frost Professor, Florida State University College of Law

Eugene Volokh, Gary T. Schwartz Professor of Law, UCLA School of Law

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1), it contains 2,511 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font.

Dated: March 18, 2021                   /s/ David J. Carey
                                        David J. Carey

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2021, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit, causing notice of such filing to be served upon all parties registered on the CM/ECF system.

*/s/ David J. Carey*
David J. Carey