IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

DIANA MEY,

        Plaintiff,

v.                                    CIVIL ACTION NO. 5:19-CV-315
                                         Judge Bailey

MEDGUARD ALERT, INC.,
SAFE HOME SECURITY, INC.,
LIFEWATCH, INC. and A
HOLDING GROUP, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

Pending before this Court is Defendants' Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted [Doc. 73], filed March 11, 2021. Plaintiff filed a response [Doc. 80] to the Motion on March 25, 2021, and defendants filed a reply [Doc. 83] on March 31, 2021. Accordingly, the Motion is fully briefed and is ripe for decision. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

This case arises out of alleged violations of the Telephone Consumer Protection Act ("TCPA") and the West Virginia Consumer Credit and Protection Act ("WVCCPA"). According to the Second Amended Complaint, defendants conducted a common enterprise whereby they engaged telemarketers to make unsolicited calls to the plaintiff on telephone numbers listed on the Do Not Call Registry. [Doc. 67 at 3–5]. Plaintiff alleges she received

1

numerous unsolicited telemarketing calls from each defendant, including one on November 2, 2015, in which an agent represented he was calling on behalf of Lifewatch, numerous calls from the same number, a call on August 22, 2018, with a prerecorded voice message from "Sarah from Be Safe At Home," and one on August 20, 2019, where, after feigning interest in the product/services, plaintiff was transferred to a live agent who represented that she was affiliated with Five Diamond Home Security. [Doc. 67 at 6]. Plaintiff alleges that Medguard was doing business as "Be Safe at Home" and that a third-party individual received a similar call from "Be Safe at Home" before being charged by MedGuard. [Id.]. Further, plaintiff alleges that Safe Home Security was doing business as "Five Diamond Home Security," and that the agent indicated that the installer for Five Diamond Home Security would be Michael Blakeney, who is alleged to be a regional manager for Security Systems, Inc., a company doing business as Safe Home Security. [Id. at 7].

In their memorandum in support of their motion to dismiss, defendants argue, first, that in light of the decision in ***Barr v. Amer. Assn. Of Political Consultants, Inc.***, 140 S.Ct. 2335 (2020) ("***Barr***"), this Court lacks subject matter jurisdiction over the TCPA claims in this case. In that case, the Supreme Court found that a 2015 amendment to the TCPA which exempted calls seeking collection of debts to the Government was unconstitutional. Defendants argue that the statute was unconstitutional and void for a five-year period which includes the calls in this case. Defendants argue that footnote 12 of that opinion, which states that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction," is but "pure obiter dicta that is 'unnecessary to the decision in the case' and thus is not binding." [Doc. 74 at 15] (citation omitted). Second, defendants argue that the WVCCPA claims should be dismissed for

2

failure to state a claim because the Second Amended Complaint fails to plead "an ascertainable loss, a causal connection or that [plaintiff] met the notice requirement," all of which defendants contend is required under W.Va. Code § 46A-6F-501. Third, the defendants argue that at least one of the alleged calls, which took place November 23, 2015, must be dismissed because it is outside the WVCCPA's two-year statute of limitations. Finally, defendants request that, if the Court does not dismiss the claims, the case should be stayed pending a decision in *Facebook, Inc. v. Duguid*.

## LEGAL STANDARD

### Motion to Dismiss for Lack of Subject Matter Jurisdiction

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction. A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975). Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Materson v. Stokes*, 166 F.R.D. 368, 371 (E.D. Va. 1996). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

## Motion to Dismiss for Failure to State a Claim

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Twombly*, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." *Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into

4

one for summary judgment." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id.* at 396–97.

## ANALYSIS

First, the Court turns to defendants' argument that the Court lacks jurisdiction over the TCPA claims. This Court recently dealt with the same arguments regarding the impact of *Barr* in *Mey v. John Doe Defendant I et al*, Civ. A. No. 5:19-CV-237 [Doc. 126], (N.D. W.Va. April 23, 2021):

> Certain defendants contend that Count I of plaintiff's Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1), because this Court lacks subject matter jurisdiction, in that § 227(b)(1)(A) of the TCPA was unconstitutional during the time the calls on which plaintiff rests her claims were made.
>
> In *Barr v. Amer. Assn. Of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020) ("*Barr*"), the Supreme Court, in a fractured decision, held that the 2015 amendment to the TCPA exempting calls seeking collection of debts to the Government was unconstitutional.
>
> While the district courts are split on the issue of whether *Barr* has any effect on the liability of calls other than Government collection calls, the weight of authority appears to be to the effect that those calls and callers are unaffected by *Barr*.
>
> In *Barr*, "Justice Kavanaugh, joined by the Chief Justice and Justice

5

Alito, concluded in Parts I and II that this amendment was unconstitutional because it favored debt-collection speech over political or other speech in violation of the First Amendment. 140 S.Ct. at 2342–48. In Part III, these three Justices concluded that the 2015 amendment should be severed leaving the bulk of the TCPA intact. *Id.* at 2348–56. Justice Sotomayor, who concurred, would have based Parts I and II on a different ground (applying intermediate as opposed to strict scrutiny to the speech) but concurred in the conclusion and in Part III with respect to severability. *Id.* at 2356–57. Justices Breyer, Ginsburg and Kagan, who dissented in part, disagreed that the amendment violated the First Amendment, but ultimately concurred with Part III finding the amendment severable. Id. at 2357–63. Justices Gorsuch and Thomas agreed with Parts I and II that the amendment was unconstitutional but dissented on the issue of severability. *Id.* at 2363–67. Thus, '[s]ix Members of the Court ... conclude[d] that Congress ha[d] impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment' and '[s]even Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.' *Id.* at 2343." ***McCurley v. Royal Sea Cruises, Inc.***, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021).

As the Court noted, "the general rule is that 'an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that

reason has no effect on the original statute.' *AAPC*, 140 S.Ct. at 2353 (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526–27 (1929)). If the government debt exception provision was void at its inception in 2015, it would have no effect on the pre-2015 text of the statute. Since there are no constitutional defects to the pre-2015 text, the statute's enforceability is unaffected by the amendment. The conduct at issue here was not impacted by the exception." *Less v. Quest Diagnostics Inc.*, 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021) (Zouhary, J.).

In his decision, Justice Kavanaugh directly addressed the issue, stating:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. . . . On the other side of the ledger, **our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

140 S.Ct. at 2355, n.12.

The cases which are relied upon by the defendants dismissed the above footnote as dicta. *See Lindenbaum v. Realgy, LLC*, 2020 WL

7

6361915 (N.D. Ohio Oct. 29, 2020), *Creasy v. Charter Comm'ns Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) and *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).

As noted in *McCurley*, *supra*:

Even if it was only dicta, as argued by Defendant, the district court is not at liberty to completely ignore this pronouncement. *See, e.g., United States v. Montero-Camargo*, 208 F.3d 1122, 1133 n.17 (9th Cir. 2000) ("Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what the court might hold; accordingly we do not blandly shrug them off because they were not a holding.") (quotation omitted). The Eleventh Circuit articulately explained:

> We have always believed that when the Founders penned Article III's reference to the judicial power being rested 'in one Supreme Court and in such inferior Courts' as Congress may establish, they used 'superior' and 'inferior' as contrasting adjectives, with us being on the short end of the contrast. It would never occur to use to tell the Supreme Court that we would decide our cases based on our analysis of its

8

> decisions, not its own analysis of them if that analysis had been announced in a case where it was not essential to the result.... [T]here is dicta, and then there is Supreme Court dicta.

*Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (citation omitted). The Eleventh Circuit cites numerous cases recognizing that "dicta from the Supreme Court is not something to be lightly cast aside." *Id.*; *see, e.g., McCoy v. Mass. Ins. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("We think that federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... a dictum is of recent vintage and not enfeebled by any subsequent statement."); *Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3rd Cir. 2003) (en banc) ("Although the Committee is doubtless correct that the Supreme Court's dicta are not binding on us, we do not view it lightly."); *Wynne v. Town of Great Falls*, 376 F.3d 292, 298 n.3 (4th Cir. 2004) ("[W]ith inferior courts, like ourselves ... carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative."); *United States v. Becton*, 632 F.2d 1294, 1296

9

> n.3 (5th Cir. 1980) ("We are not bound by dicta, even of our own court.... Dicta of the Supreme Court are, of course, another matter.").

*McCurley*, 2021 WL 288164, at *3.

Most telling, in *American Assoc. of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019), the decision which was affirmed by *Barr*, the Court held:

> The Plaintiffs maintain in their appellate submissions that the constitutionally flawed debt-collection exemption invalidates the entirety of the automated call ban, rendering severance of the debt-collection exemption improper. The Government argues, however, that the controlling authorities require a severance of the exemption from the automated call ban.
>
> For several reasons, we agree with the Government on the severance issue. First and foremost, the explicit directives of the Supreme Court and Congress strongly support a severance of the debt-collection exemption from the automated call ban. Furthermore, the ban can operate effectively in the absence of the debt-collection exemption, which is clearly an outlier among the statutory exemptions.
>
> In circumstances such as these, the Supreme Court has recognized that severance is the preferred remedy. As the

Chief Justice explained in the Court's *NFIB v. Sebelius* decision, if Congress wants the balance of a statute to stand when one aspect is constitutionally flawed, a reviewing court "must leave the rest of the [statute] intact." *See* 567 U.S. 519, 587 (2012). By severing the flawed portion of a statute, the court can limit the impact of its ruling of constitutional infirmity. *See Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328 (2006); *United States v. Under Seal*, 819 F.3d 715, 721–22 (4th Cir. 2016) (recognizing that severance of a flawed portion of a statute prevents a court from nullifying too much of that enactment). The general rule is thus " 'that partial ... invalidation [of a statute] is the required course.' " *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985)).

Complementing the Supreme Court's strong preference for a severance in these circumstances, Congress has explicitly mandated that, if a TCPA provision is determined to be constitutionally infirm, severance is the appropriate remedy. That is, Congress has directed that, if any part of the TCPA "is held invalid, the remainder ... shall not be affected." *See* 47 U.S.C. § 608. That severability provision eases our inquiry on

11

the severance issue and creates "a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *See Alaska Airlines*, 480 U.S. at 686 (citing *INS v. Chadha*, 462 U.S. 919, 932 (1983)). As a result, severance of the debt-collection exemption from the balance of the automated call ban will comply with the explicit directive of Congress and with controlling Supreme Court precedent.

We are also satisfied that a severance of the debt-collection exemption will not undermine the automated call ban. For twenty-four years, from 1991 until 2015, the automated call ban was "fully operative." *Free Enter. Fund*, 561 U.S. at 509 (citations and internal quotation marks omitted). As a result, the Plaintiffs simply cannot show that excising the debt-collection exemption will hamper the function of the ban. *See Alaska Airlines*, 480 U.S. at 686 (explaining that only "strong evidence" overcomes presumption created by severability clause). In these circumstances, we agree with the Government and direct the severance of the debt-collection exemption from the balance of the automated call ban.

*Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 171 (4th Cir. 2019), *aff'd sub nom. Barr v. Am. Ass'n of Pol.*

12

*Consultants, Inc*, 140 S.Ct. 2335 (2020).

Those courts which have found the TCPA to be valid with regard to non-Government debt calls, even in light of *Barr*, include *McCurley*, *supra; Less v. Quest Diagnostics Inc.*, 2021 WL 266548 (N.D. Ohio Jan. 26, 2021); *Stoutt v. Travis Credit Union*, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021); *Rieker v. Nat'l. Car Cure, LLC*, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Sav. Co., LLC*, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor California Auto Group, LLC*, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Abramson v. Federal Ins. Co.*, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020), *Buchanan v. Sullivan*, 2020 WL 6381563 (D. Neb. Oct. 30, 2020); *Schmitt v. AmerAssist A/R Solutions Inc.*, 2020 WL 6135181 (D. Ariz. Oct. 19, 2020); *Canady v. Bridgecrest Acceptance Corp.*, 2020 WL 5249263 (D. Ariz. Sept. 3, 2020); *Komaiko v. Baker Techs., Inc.*, 2020 WL 5104041 (N.D. Cal. Aug. 11, 2020); and *Burton v. Fundmerica, Inc.*, 2020 WL 4504303 (D. Neb. Aug. 5, 2020).

For all the reasons stated above, this Court finds that the TCPA, except for the 2015 amendment, remains and remained in full force and effect throughout its tenure.

*Mey v. John Doe Defendant I et al*, Civ. A. No. 5:19-CV-237 [Doc. 126 at 20–27], (N.D. W.Va. April 23, 2021) (Bailey, J.). This Court finds no reason to deviate from the above analysis.

Second, this Court finds that plaintiff has stated a claim under W.Va. Code

13

§ 46-6F-502, which does not require that plaintiff sustain an ascertainable loss of money or property or require that plaintiff provide a notice and right to cure. Defendants argue that these requirements, set forth in W.Va. Code § 46A-6-106(a), apply to plaintiff's claims brought under W.Va. Code § 46-6F-502 by virtue of a reference to the former in § 46A-6F-501(8). § 46A-6F-502(1) provides:

> (1) If a telemarketer violates the provisions of section five hundred one of this article, the consumer has a cause of action to recover actual damages and, **in addition, a right to recover from the violator a penalty in an amount**, to be determined by the court, of not less than one hundred dollars nor more than three thousand dollars. No action brought pursuant to the provisions of this subsection may be brought more than two years after the date upon which the violation occurred or the due date of the last scheduled payment of the agreement, whichever is later.

(Emphasis added). The above-emphasized text makes clear that the private cause of action created by this section does not require actual damages, in contrast to the private cause of action created by § 46A-6-106, where it is explicitly required. Nor does this Court find defendant's assertion that these sections are interrelated reason enough to graft the notice requirement of § 46A-6-106(c) onto § 46A-6F-502. The section referenced by defendants makes it an unfair or deceptive practice "[t]o engage in any 'unfair methods of competition and unfair or deceptive acts or practices' as specified in § 46A-6-102(f) of this code and made unlawful by the provisions of § 46A-6-102 of this code." W.Va. Code § 46A-6F-501. But this is only one of nine definitions set forth, the other eight of which do not reference article 6.

14

Third, as to the November 23, 2015, call, the parties agree that this call is outside the WVCCPA's statute of limitations. Plaintiff also concedes that she does not seek to recover under the WVCCPA for that call, but that "[c]ertain of the calls referenced in the Second Amended Complaint are actionable under the TCPA's 4-year limitations period and merely evidence the origins of subsequent calls that were made within the WVCCPA's 2-year limitations period." [Doc. 80 at 7]. As plaintiff is not seeking to recover under the WVCCPA for that call, the Court declines to decide the issue of whether Lifewatch failed to seasonably raise the statute of limitations as an affirmative defense.

Finally, defendants ask this Court to stay this case pending a decision in *Facebook, Inc. v. Duguid*. The day after defendants filed their reply in support of their Motion, that case was decided. See *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021). Accordingly, insofar as the period of the stay would have already ended, defendants request for a stay is moot.

## CONCLUSION

Upon consideration of the above, Defendants' Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted [**Doc. 73**] is hereby **DENIED**.

It is so **ORDERED**.

**DATED**: April **27**, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE